**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| MATTHEW SOLON,<br><br>                              Plaintiff,<br><br>v.<br><br>JOSHUA A.  HALE, MICHAEL O'BRIEN & MICHAEL HORTON, individually,<br><br>                              Defendants. | CIVIL ACTION FILE NO.:<br>_____<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

**COMES NOW** Plaintiff **Matthew Solon** ("Solon" or "Plaintiff") and files this civil action for monetary damages against **Joshua A. Hale** ("Hale"), **Michael O'Brien** ("O'Brien) and **Michael Horton** ("Horton"), as follows:

## INTRODUCTION

A belligerent drunk, out of jail on pending felony charges, accosted Mr. Solon and three of his friends in a dark parking lot late at night. He was rude and vulgar. When they asked him to leave, he pulled a gun, causing Mr. Solon and his friends to fear for their lives. Faced with an imminent threat of serious injury or death, Mr. Solon protected himself and his friends by confronting, disarming and subduing the man. The grainy surveillance video and every witness statement conclusively

established that Mr. Solon acted in self-defense and defense of others. He was a hero but the Defendants treated him like a criminal from the moment they arrived on the scene in response Mr. Solon's 9-1-1 call. They slapped handcuffs on him, stuck him in a patrol car, and arrested him without probable cause and in retaliation for calmly criticizing their behavior.

Mr. Solon now seeks to hold the Defendants accountable in this civil rights action. Mr. Solon alleges that Defendants Hale, O'Brien and Horton, in their individual capacities as police officers employed by the City of Kennesaw Police Department ("KPD"), violated his First and Fourth Amendment rights when they unlawfully detained him at the scene of a crime, arrested him without probable cause, and subjected him to prosecution based upon fabricated evidence and in retaliation for his criticism of their actions at the scene.

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over Solon's federal civil rights claims pursuant to 28 U.S.C. §§ 1331 and 1343.

2. Venue in this Court is proper under 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims arose in this district and division.

## PARTIES

3.   Plaintiff Matthew Solon is a United States citizen and resident of Tennessee.

4.   Defendant Joshua A. Hale is sued in his individual capacity. Hale may be personally served with the Complaint and summons at his present place of employment, Kennesaw Police Department, 2539 J.O. Stephenson Ave, Kennesaw, Georgia 30144.

5.   At all times relevant to this action, Hale was acting under color of state law and within the scope of his discretionary functions as a duly sworn, certified law enforcement officer employed by KPD.

6.   Michael O'Brien is sued in his individual capacity. O'Brien may be personally served with the Complaint and summons at his present place of employment, Kennesaw Police Department, 2539 J.O. Stephenson Ave, Kennesaw, Georgia  30144.

7.   At all times relevant to this action, O'Brien was acting under color of state law and within the scope of his discretionary functions as a duly sworn, certified law enforcement officer employed by KPD.

8.   Michael Horton is sued in his individual capacity. Horton may be personally served with the Complaint and summons at his present place of employment,

Kennesaw Police Department, 2539 J.O. Stephenson Ave, Kennesaw, Georgia 30144.

9.   At all times relevant to this action, Horton was acting under color of state law and within the scope of his discretionary functions as a duly sworn, certified law enforcement officer employed by KPD.

## FACTUAL ALLEGATIONS

10.   Mr. Solon was born and raised in Canton, Georgia. He graduated from Creekview High School in 2011.

11.   Mr. Solon graduated from Kennesaw State University with a Bachelor of Science in Electrical Engineering in 2018.

12.   Mr. Solon served in United States Army National Guard for 6 years. He achieved the rank of E-5 Sergeant and served as a Radio Operator/Maintainer. He completed a 9-month tour of duty in Afghanistan where he served as the post-wide Radio Transmission Officer in the Base Defense Operation Center and Battalion Communications NCO. Mr. Solon was honorably discharged on May 24, 2017.

13.   On June 26, 2017, Mr. Solon and three friends, Melissa Veitengrube, Shayna Thompson and Sean Loudermilk, went to Mazzy's Sports Bar and Grill in Kennesaw.

14. Dwight David Cooper and his friend, Sydney Fields, were also at Mazzy's that night.

15. At the end of the night, Mr. Solon and his friends standing by their cars in the Mazzy's parking lot when Mr. Cooper approached them and demanded a cigarette.

16. Mr. Cooper was very drunk.

17. Mr. Solon and his friends told him they did not have any cigarettes.

18. Without provocation, Mr. Cooper directed several rude and vulgar statements at Ms. Veitengrube and Ms. Thompson. He used words that, by their very utterance, would tend to incite an immediate breach of peace.

19. Mr. Solon and his friends asked him to leave them alone.

20. Mr. Cooper took a few steps back. He said, "fuck this" and pulled up his T-shirt, revealing a Glock 23 handgun tucked into his waistband.

21. Ms. Fields ran over and tried to stop Mr. Cooper, but he shoved her aside and pulled the handgun out of his waistband.

22. Mr. Cooper waived the gun around and pointed it at Mr. Solon and his companions.

23. Ms. Veitengrube, Mr. Loudermilk, Ms. Thompson and Mr. Solon were afraid and reasonably believed that they were in imminent danger of receiving a violent injury, great bodily harm or death.

24. Mr. Solon reasonably perceived that Mr. Cooper, a belligerent drunk threatening him and his friends with a deadly weapon, presented an imminent threat of grievous bodily harm or death to Mr. Solon and his friends.

25. Mr. Solon, who was unarmed, made a split second decision to use reasonable force to protect himself and his friends.

26. Mr. Solon moved rapidly. He grabbed Mr. Cooper and pushed him away from his friends so they would not be in the line of fire.

27. He struggled to disarm Mr. Cooper.

28. During the struggle, the ammunition clip fell out of the gun.

29. Mr. Solon pushed Mr. Cooper to the ground.

30. He disarmed and subdued Mr. Cooper so that he could no longer threaten Mr. Solon and his friends.

31. Mr. Solon got up and moved away from Mr. Cooper.

32. Mr. Cooper was injured during the struggle.

33. Mr. Solon picked up the ammunition clip, walked over to a lamp post in the parking lot and called 9-1-1.

34.    Mr. Solon told the 9-1-1 operator that Mr. Cooper threatened Mr. Solon and his friends with a handgun, so Mr. Solon disarmed him. He asked the operator to send an ambulance because Mr. Cooper was injured during the struggle for the weapon.

35.    Defendants Hale and O'Brien responded to dispatch and went to the scene.

36.    Defendant Hale was assigned as the lead officer for the call.

37.    Defendant Hale was not wearing a body camera.

38.    Defendant O'Brien was wearing a body camera but turned it on and off several times after he arrived on the scene.

39.    The 9-1-1 operator was still on the call with Mr. Solon when Defendants Hale and O'Brien arrived.

40.    As Hale and O'Brien pulled into the parking lot, she told Mr. Solon to place the gun on the ground, point to it so the officers would know it was there and then put his hands in the air.

41.    Mr. Solon immediately complied.

42.    Defendants Hale and O'Brien got out of their cars with their guns drawn.

43.    Defendant Hale ordered Mr. Solon to turn around and place his hands on the vehicle behind him.

44.    Mr. Solon immediately complied.

45.   He hung up with 9-1-1 and put his phone down on the trunk of the car.

46.   He stood still with his hands on the trunk of the car.

47.   Defendant Hale saw the gun on the ground, and asked, "Where did that come from?"

48.   Mr. Solon said that the gun belonged to Mr. Cooper.

49.   Mr. Solon was calm and polite. He never raised his voice.

50.   Perceiving that Mr. Solon was calm, cooperative and complying with commands, Defendants Hale and O'Brien walked past him and over to Mr. Cooper, who was lying on the ground on the other side of the car that Mr. Solon was standing behind.

51.   Defendants Hale and O'Brien did not secure the handgun that was lying on the ground behind the car and just a few feet away from Mr. Solon.

52.   There were six other people at the scene.

53.   Defendants Hale and O'Brien did not know any of them.

54.   Defendants Hale and O'Brien did not order any of the other six people on the scene to turn around and place their hands on a car.

55.   Mr. Solon, who called 9-1-1 to report that he and his friends were victims of a crime, was the only person who was immediately informed that he was not free to move about the scene.

56. Antoine Bernard Lyra and Osoria Lopez, were standing by their cars and just a few feet away from Mr. Cooper.

57. Defendant Hale asked Mr. Lyra and Mr. Lopez for their driver's licenses.

58. Defendant Hale let Mr. Lopez walk over to his car to get his driver's license

59. Defendant Hale never frisked Mr. Lopez or Mr. Lyra for officer safety.

60. Mr. Lyra and Mr. Lopez told Defendant Hale that they did not see what happened, so Defendant Hale let them leave the scene less than 5 minutes after Defendants Hale and O'Brien arrived.

61. While Defendant Hale spoke to Mr. Lyra and Mr. Lopez, Defendant O'Brien walked over and stood behind Mr. Solon. His body cam was not activated.

62. Mr. Solon told Defendant O'Brien that Mr. Cooper had threatened him and his friends with the gun. He said that he disarmed and subdued Mr. Cooper.

63. Solon spoke calmly to Defendant O'Brien. He did not curse or yell.

64. Mr. Solon criticized the 9-1-1 operator's for not knowing the address for Mazzy's.

65. He said he was unarmed and offered to be frisked.

66. Mr. Solon reminded Defendant O'Brien that he was not a criminal; he was a victim who called 9-1-1 to report a violent crime.

67. Defendant O'Brien cut him off saying, "I don't know who you are."

68.  Mr. Solon said, "I'm telling you who I am."

69.  Defendant O'Brien said, "Ok, do you think people ever lie to the police?"

70.  Defendant O'Brien did not ask to see Mr. Solon's drivers' license to verify his identity.

71.  Mr. Solon said, "I could've got shot today."

72.  Defendant O'Brien responded, "Yeah, me too, that's my job."

73.  Mr. Solon tried to relate to Defendant O'Brien and explained that he knew what danger was from his time in the military.

74.  Defendant O'Brien responded, "Congratulations, Sir."

75.  After standing with his hands on the trunk of a car for three minutes, Mr. Solon hitched up his shorts with his right hand.

76.  Defendant O'Brien reacted by grabbing Mr. Solon's hand and putting it back on the trunk of the car.

77.  Mr. Solon did not resist.

78.  Defendant O'Brien said, "Don't go reaching into your pockets."

79.  Mr. Solon replied, "I wasn't. I was just pulling up my shorts."

80.  Defendant Sergeant Horton, a shift supervisor with the authority to give commands to subordinate officers, including Defendants Hale and O'Brien, had arrived on the scene.

81.   Defendant Horton was walking past Mr. Solon and Defendant O'Brien when Mr. Solon tried to pull up his shorts.

82.   Defendant Horton said, "That's a good way to get thrown on the ground."

83.   Defendant O'Brien frisked Mr. Solon, and removed his wallet from his back right pocket. He found no weapons or contraband on Mr. Solon.

84.   Defendant Horton saw O'Brien frisk Mr. Solon and knew he was unarmed.

85.   Defendant Horton had been on the scene long enough to see that Mr. Solon was calm and compliant.

86.   Defendant O'Brien asked Mr. Solon if he understood what was going on.

87.   Mr. Solon said he understood exactly what was going on.

88.   He criticized Defendant O'Brien, saying, "You're not exactly being cooperative."

89.   Defendant O'Brien immediately handcuffed Mr. Solon.

90.   He escorted him back to his patrol car, put him in the back seat and shut the door.

91.   Defendant Horton saw Defendant O'Brien seize Mr. Solon.

92.   Defendant O'Brien detained Mr. Solon at 2:09 a.m., three minutes after the Defendants arrived on the scene.

93.   Under the totality of the circumstances, Defendants Horton and O'Brien knew the following facts at the time of the seizure: (a) Mr. Solon had called 9-1-1 to report that he and his friends were victims of an aggravated assault and he had disarmed the assailant; (b) he had obeyed every command given to him by law enforcement; (c) he was unarmed; (d) he was calm; (e) he was not obstructing the investigation; and (f) he did not pose a threat to the officers or anyone else on the scene.

94.   Defendant O'Brien and Horton had no arguable reasonable articulable suspicion that Mr. Solon had committed or was about to commit a crime that would justify seizing him by handcuffing him and placing him in the back of a police car, i.e. a custodial arrest.

95.   Any objectively reasonable officer would have known that the scope and intrusiveness of the seizure was unreasonable, unnecessary and served no legitimate law enforcement objective.

96.   Defendants O'Brien, with Defendant Horton's approval, seized Mr. Solon for engaging in protected speech by calmly (and mildly) criticizing how law enforcement personnel, including Defendant O'Brien, were handling the investigation.

97.   After seizing Mr. Solon, Defendant O'Brien did not go get Mr. Solon's wallet (still sitting on the trunk of the car), take out his driver's license and confirm his identity.

98.   Defendant Hale spoke with Ms. Fields and Mr. Cooper.

99.   Defendant Hale had dispatch run Mr. Cooper's driver's license at 02:16:43.

100.  Upon information and belief, Defendant Hale did not ask dispatch to run Mr. Cooper's criminal history.

101.  Had Defendant Hale obtained this readily available information, Defendant Hale would have learned that Mr. Cooper had been arrested by KPD officers on April 22, 2017 for Driving Under the Influence (Per Se), Possession of Marijuana (Felony) and Possession of a Firearm During Commission of a Felony.

102.  By consuming alcohol on June 27, 2017, Mr. Cooper violated one of the standard conditions of pre-trial release known to every competent law enforcement officer, i.e. "Defendant shall not drink alcohol."

103.  Mr. Cooper was heavily intoxicated and told Defendant Hale that he did not remember what occurred.

104. Mr. Cooper did not tell Defendant Hale or any other officer that Mr. Solon hit him in the head with the gun after Mr. Cooper was restrained on the ground by bystanders.

105. Ms. Fields was hysterical and either incapable or unwilling to give a statement.

106. Defendants O'Brien and Hale separately interviewed Shayna Thompson. She told them that Mr. Cooper came over to where she was standing with her friends and asked them for a cigarette. When they told him they did not have a cigarette, Mr. Cooper said rude and vulgar things to her and Ms. Veitengruber. She said that Mr. Cooper pulled a gun from his waistband and and threatened them. She said that Mr. Solon used force to defend them from Mr. Cooper, who was the aggressor.

107. Defendant Hale spoke with Michael Loudermilk. Mr. Loudermilk told him that Mr. Cooper asked for a cigarette. When they told him they did not have one, he said rude and vulgar things to Ms. Veitengruber and Ms. Thompson. He said that when they asked him to leave, Mr. Cooper pulled a gun from his waist band, pointed it in the air and then at them. He told him that Solon confronted Mr. Cooper and took the gun away.

108.  Defendant Hale spoke with Melisa Veitengruber. She recounted the same facts. She confirmed that Mr. Cooper was the aggressor and Mr. Solon confronted Mr. Cooper and took the gun away.

109.  Defendant Hale never asked Mr. Loudermilk, Ms. Thompson or Ms. Veitengruber how Mr. Cooper received his injury.

110.  Had he done so, they would have said that he was injured during the struggle for the gun.

111.  They would have said that Mr. Solon never hit Mr. Cooper in the head with the gun after Mr. Cooper was restrained on the ground.

112.  They would have told Defendant Hale that Mr. Solon only used the force reasonably necessary to disarm and subdue Mr. Cooper.

113.  None of the other officers on the scene, including Defendants O'Brien and Horton, asked Mr. Loudermilk, Ms. Thompson or Ms. Veitengruber how Mr. Cooper received his injury or whether Mr. Solon used any gratuitous or unnecessary force.

114.  By 2:20 a.m., the Defendants had interviewed every witness on the scene – except Mr. Solon. The facts provided by the witnesses conclusively established that Mr. Solon had acted in defense of self and others when he used reasonable force to disarm and subdue Mr. Cooper. None of the

witnesses said Mr. Solon hit Mr. Cooper in the head with the gun after Mr. Cooper was restrained on the ground.

115. The Defendants left Mr. Solon handcuffed in the back of a patrol car for 15 minutes after completing all the witness interviews.

116. During that fifteen minute period, the Defendants took no meaningful steps to further the investigation.

117. The Defendants finally pulled Mr. Solon out of the patrol car.

118. As Defendant Hale took the handcuffs off, Mr. Solon criticized the way he had been treated by the Defendants. He calmly said, "Next time I won't call you, if this is the way it is going to be."

119. Defendant O'Brien responded, "And you wonder why you're in cuffs."

120. Defendant Hale told him to lose the attitude.

121. Defendant O'Brien told Mr. Solon that he was in the "back of the car" because he "started having an attitude, reaching into his pockets and saying 'Hey, I'm the hero."

122. Mr. Solon did not tell Defendant O'Brien he was a "hero;" he told him that he was a victim who called 9-1-1 to report a crime and did not appreciate being treated like a criminal.

123. Mr. Solon did not start "touching his pockets;" he hiked up his shorts once and only after telling Defendant O'Brien he was unarmed and he should feel free to frisk him.

124. Mr. Solon did not have an "attitude;" he had calmly criticized law enforcement's response to his 9-1-1 call by, among other things, saying Defendant O'Brien was not being cooperative.

125. Mr. Solon was no longer handcuffed but he was not free to move about the scene. He had to remain in the immediate presence of one or more off the officers on the scene.

126. 40 minutes after arriving on the scene and at least 20 minutes after completing his interviews with the other witnesses on the scene, Defendant Hale finally asked Mr. Solon what happened.

127. Mr. Solon told Defendant Hale that Mr. Cooper had approached him and his friends and asked for a cigarette. He said that Mr. Cooper was very drunk and rude, especially to Ms. Thompson and Ms. Veitengruber. He said that they asked Mr. Cooper to leave them alone. He said that Mr. Cooper pulled a gun from his waist band and threatened him and his friends with the gun.

128. Mr. Solon said that he believed he and his friends were in imminent danger of being seriously injured or killed by Mr. Cooper, a belligerent drunk who was

threatening them with a gun. Mr. Solon said he was acting in self-defense and defense of others when he used force to confront and disarm Mr. Cooper.

129. Mr. Solon told Defendant Hale that he got up and walked away after he disarmed and subdued Mr. Cooper.

130. Mr. Solon said that the ammunition clip fell out of the handgun during the initial struggle, so he picked it up as he walked away from Mr. Cooper.

131. He did not say that the gun fell to the ground during the struggle.

132. Mr. Solon never told Defendant Hale that he used the gun to strike Mr. Cooper in the head after he had been restrained on the ground by bystanders to ensure that he would stay down.

133. Mr. Solon told Defendant Hale that he only used force against Mr. Cooper during the initial altercation when his life and the lives of his friends were in danger.

134. Defendant Hale reviewed surveillance footage from the parking lot. The surveillance footage was black and white and recorded by a camera located well above ground level and at least 100 feet away from the area where the incident occurred.

135. No reasonable officer reviewing the surveillance footage would reasonably conclude that Mr. Solon struck Mr. Cooper with the gun after the struggle to disarm and subdue Mr. Cooper.

136. The video evidence was wholly consistent with the witness statements from Mr. Solon, Ms. Thompson, Ms. Veitengruber, Mr. Loudermilk, Mr. Lyra, Mr. Cooper and Ms. Fields.

137. Although Mr. Loudermilk, Ms. Veitengruber and Ms. Thompson remained on the scene, the Defendants did not ask them any follow up questions after reviewing the surveillance footage.

138. After reviewing the surveillance footage and speaking with the witnesses on the scene, every reasonable officer would have reached the same conclusions: (1) Mr. Solon, Ms. Thompson, Ms. Veitengruber and Mr. Loudermilk were victims of an Aggravated Assault (among other crimes) committed by Mr. Cooper; and (2) Mr. Solon acted reasonably, lawfully, and heroically by using less than lethal force to protecting himself and his friends from the imminent risk of serious injury or death posed by Mr. Cooper, who possessed and was threatening to use a deadly weapon.

139. The surveillance footage and the witness statements conclusively established that Mr. Solon acted in defense of self and others, and only used that degree of force necessary to disarm and subdue Mr. Cooper.

140. Defendant Hale conferred with Defendants O'Brien and Horton.

141. He told Defendants O'Brien and Horton that he planned to arrest Mr. Solon and charge him with Battery Substantial Physical Harm, a misdemeanor, and Possession of a Firearm during the Commission of a Crime, a Felony.

142. The Defendants knew that there was no arguable probable cause to arrest Mr. Solon for any crime because Mr. Solon never struck Mr. Cooper after he had been restrained on the ground.

143. The Defendant knew the surveillance video did not show Mr. Solon striking Mr. Cooper after he was disarmed and subdued.

144. The Defendants knew Mr. Solon did not say he struck Mr. Cooper after he had been disarmed and neutralized.

145. The Defendants knew no witness said Mr. Solon struck Mr. Cooper in the head with the gun after he had been restrained on the ground.

146. The Defendants also knew that Defendant O'Brien, the only officer with a functioning body camera, did not record Defendant Hale's interview with Mr. Solon.

147.   Defendant Hale fabricated evidence of probable cause by claiming that Mr. Solon said he hit Mr. Cooper in the head with the gun after he was restrained on the ground.

148.   Defendants O'Brien and Horton actively participated in Defendant Hale's decision to fabricate evidence of probable cause and arrest him.

149.   Defendant Horton, a shift supervisor with authority over Defendants Hale and O'Brien, did not intervene to prevent Mr. Solon unlawful arrest.

150.   The Defendants, acting in concert with one another, agreed to subject Mr. Solon to arrest, incarceration and prosecution to teach him a lesson for criticizing law enforcement's response to his 9-1-1 call.

151.   Mr. Solon was arrested on the scene and transported to the Acworth Jail.

152.   He was transferred to the Cobb County Detention Center.

153.   He was incarcerated for approximately 35 hours.

154.   He was released after paying a bond.

155.   Defendant Hale wrote a police report with fabricated statements including: (a) Mr. Solon was yelling things at him when he arrived on the scene, (b) Mr. Solon was detained for continually disobeying orders to keep his hand out of his pockets and remain still until we deemed the scene safe; (c) Mr. Solon was detained in a patrol car for safety; (d) Mr. Solon told him that "the gun fell on

the ground" during the struggle; (e) Mr. Solon told him that "he went to pick up the gun, unload it, then use it to strike Cooper in the head so "he would stay down;" and (f) that Defendant Hale could see Mr. Solon strike Cooper with the gun after Mr. Cooper was disarmed and subdued.

156. Defendants O'Brien and Horton knew that the statements in Officer Hale's report were false but took no steps to intervene and prevent Officer Hale from presenting fabricated evidence to a magistrate judge in support of an arrest warrant for Mr. Solon.

157. Officer Hale submitted a warrant affidavit to a magistrate judge that relied on false statements and omitted statements that, had they been included, would have made clear that there was no probable cause to support a warrant.

158. Officer Hale's warrant affidavit contained two false statements that formed the sole basis for probable cause: (a) that "said accused did use a Glock 23 Pistol to strike the victim in the head after the victim had been restrained on the ground by bystanders to ensure he "stayed down" and (b) "Said accused did possess a Glock Model 23 pistol in his hand and use it to strike the victim in the head."

159. Officer Hale's warrant affidavit omitted at least the following material facts: (a) Mr. Cooper had committed an aggravated assault, or at a minimum, simple

assault upon Mr. Solon and 3 other people; (b) all witnesses on the scene as well as video evidence showed that Mr. Solon acted in self-defense and defense of others when he disarmed and subdued Mr. Cooper who was a drunk armed felon that brandished a firearm, threatening to use it on strangers after they refused to give him a cigarette that they did not have; and (c) that no person who witnessed or participated in the incident told Officer Ward that Mr. Solon struck Mr. Cooper in the head with the gun to ensure that "he stayed down."

160. Officer Hale's materially false statements and omissions resulted in the issuance of an arrest warrant that prolonged Mr. Solon's initial incarceration and caused him to be subject to prosecution by the Cobb County District Attorneys' Office.

161. Mr. Solon had to hire an attorney and face a lengthy criminal prosecution.

162. After almost a year, all charges against Mr. Solon were dismissed.

163. The District Attorney concluded that Mr. Solon "acted in self-defense and in the defense of others by disarming and subduing an individual who approached him and then proceeded to brandish a firearm."

164.   Officer Hale secured arrest warrants for Mr. Cooper for Simple Assault, a misdemeanor and Possession of a Firearm During the Commission of a Crime – the same felony charge he falsely brought against Mr. Solon.

165.   The District Attorney rejected Officer Hale's mischaracterization of Mr. Cooper's conduct and secured an Indictment charging him with Aggravated Assault (4 counts) and Possession of a Firearm During the Commission of a Crime. The charges are pending. Mr. Cooper faces up to 85 years in prison.

166.   As a direct and proximate cause of Defendants' initial detention, subsequent arrest and prosecution, Mr. Solon incurred economic damages, including, but not limited to, bond money, attorney's fees and costs in his criminal case, and damage to his personal and professional reputation entitling him to an award of economic damages in an amount to be proven at trial.

167.   As a direct and proximate cause of Defendants' initial detention, subsequent arrest and prosecution, Mr. Solon suffered physical and emotional injuries, including but not limited to loss of liberty, shame, embarrassment, fear and trauma entitling him to an award of general damages in an amount to be determined by the enlightened conscience of the jury.

168.   Defendants acted maliciously, intentionally, and with deliberate indifference for Mr. Solon's First and Fourth Amendment rights, entitling him to an award of punitive damages in an amount to be determined by the enlightened conscience of a jury.

## COUNT I

### FOURTH AMENDMENT
*False Arrest*
(All Defendants)

169.   The Defendants violated Mr. Solon's Fourth Amendment rights when, acting in concert with one another, they arrested Mr. Solon without probable cause for crimes he did not commit.

170.   Every objectively reasonable officer would have recognized that the facts known to the Defendants at the time of his arrest conclusively established that Mr. Solon acted in defense of self and others when he used reasonable force to  disarm and subdue a heavily intoxicated man who was threatening him and his friends with a deadly weapon.

171.   Defendants knowingly ignored information offered to them by every witness and failed to obtain other readily available, wholly exculpatory evidence from them that would have eliminated Defendants' conjecture that Mr. Solon struck Mr. Cooper with the gun after he was disarmed and subdued.

172. Pre-existing law gave the Defendants fair warning that arresting Mr. Solon without arguable probable cause violated the Fourth Amendment. *See, e.g.*, *Skop v. City of Atlanta*, 485 F.3d 1130, 1139 (11th Cir. 2007).

173. Pre-existing law gave the Defendants fair warning that turning a "blind eye to evidence suggesting that a suspect is innocent by choosing to ignore information that hs been offered to him or her or by electing not to obtain easily discoverable facts" violated the Fourth Amendment. *See Cozzi v. City of Birmingham*, 892 F.3d 1288 (11th Cir. 2018)(internal punctuation omitted), citing *Kingsland v. City of Miami*, 382 F.3d 1220, 1220, 1233 (11th Cir. 2004)

174. As direct and proximate result of Defendants' actions, Mr. Solon was seized, incarcerated and subject to prosecution without probable cause in violation of his Fourth Amendment rights, entitling him to actual, compensatory and punitive damages.

## COUNT II

### FIRST AMENDMENT
### *Retaliatory Arrest*
(All Defendants)

175.   The Defendants violated Mr. Solon's First Amendment rights when, acting in concert with one another, they agreed to arrest Mr. Solon without probable cause and in retaliation for his legitimate, peaceable criticism of law enforcement.

176.   Throughout the incident, Mr. Solon made statements critical of law enforcement's response to his 9-1-1 call including, without limitation: (1) criticizing 9-1-1 operators for their inability to find his location; (2) criticizing Defendant O'Brien for not being uncooperative with Mr. Solon; (3) informing the Defendants that he would not call them next time because of how he was being treated; and (4) questioning the value of the Defendants' effort to investigate the incident.

177.   Mr. Solon made these statements in a calm and peaceable manner that did not disrupt the Defendants' from their lawful activities.

178.   Every objectively reasonable officer under the circumstances confronting the Defendants would have known that arresting Mr. Solon without probable

cause and in retaliation for his legitimate, peaceable criticism of law enforcement violated the First Amendment.

179. Under the facts and circumstances alleged herein, pre-existing law gave Defendants fair warning that seizing and detaining Mr. Solon in retaliation for his legitimate, peaceable criticism of law enforcement violated the First Amendment. *See Houston v. Hill*, 482 U.S. 451, 461-63 (1987)(the First Amendment "protects a significant amount of verbal criticism and challenge directed at police officers . . . The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."); *see also Skop v. City of Atlanta*, 485 F.3d 1130, 1139 (11th Cir. 2007) (finding that the idea that a driver's brief inquiry to an officer as to why she should not be allowed to pull into her driveway constituted obstruction "collides head-on with the First Amendment."), *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994)(supervisor liable if he personally participated in the alleged constitutional violation.)

180.   As direct and proximate result of Defendants' actions, Mr. Solon was seized, incarcerated and subject to prosecution without probable cause in violation of his Fourth Amendment rights, entitling him to actual, compensatory and punitive damages.

## COUNT III

**FOURTH AMENDMENT**
***Unlawful and Unreasonable Detention***
(Defendants Michael O'Brien & Horton)

181.   Defendant O'Brien violated Mr. Solon's Fourth Amendment rights by unreasonably seizing and detaining him at the scene without arguable reasonable articulable suspicion, arguable probable cause, or other lawful basis.

182.   No objectively reasonable officer would have believed that seizing and detaining him at the scene was supported by arguable reasonable suspicion.

183.   Defendant O'Brien's seizure of Mr. Solon was unreasonable in scope, intrusiveness and duration and unnecessary to the fulfillment of the purported law enforcement objective – investigation of the incident.

184.   No objectively reasonable officer would have believed the scope, intrusiveness and duration of the seizure was reasonable or necessary to achieve any legitimate law enforcement objective.

185.   Defendant O'Brien's seizure of Mr. Solon amounted to a full custodial arrest without probable cause.

186.   Under the facts and circumstances alleged herein, every objectively reasonable law enforcement officer in the Defendants' position would have known that the scope, intrusiveness and duration of the seizure violated the Fourth Amendment.

187.   Defendant Horton, a supervisory official on the scene, personally participated in Defendant O'Brien's unreasonable seizure and detention of Mr. Solon.

188.   Under the facts and circumstances alleged herein, pre-existing law gave Defendants O'Brien and Horton fair warning that Mr. Solon's seizure and detention was unreasonable in scope, intrusiveness and detention. *See United States v. Gil*, 204 F.3d 1347, 1351 (11th Cir. 2000) (investigatory detention that was not reasonably related in scope to the circumstances which justified the interference in the first place violates the Fourth Amendment); *Thompson v. Hall*, 479 Fed. Appx 243 (11th Cir. 2012) (finding handcuffing and investigatory detention of plaintiff was unreasonable.) *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994)(supervisor liable if he personally participated in the alleged constitutional violation.)

189. As a direct and proximate result of Defendants' actions, Mr. Solon was seized and detained in an unreasonable manner in violation of his Fourth Amendment rights, entitling him to actual, compensatory and punitive damages.

## COUNT IV

**FOURTH AMENDMENT**
*Failure to Intervene - Unlawful and Unreasonable Detention*
(Defendant Michael Horton)

190. Defendant Holton, a sergeant and supervisor on the scene, violated Mr. Solon's Fourth Amendment rights by failing to intervene to stop Defendant O'Brien's unlawful seizure and detention of Mr. Solon without arguable reasonable suspicion, arguable probable cause or other lawful basis.

191. Defendant Holton knew that Defendant O'Brien's seizure of Mr. Solon was unreasonable in scope, intrusiveness and duration and unnecessary to the fulfill of the purported law enforcement objective – investigation of the incident.

192. Defendant Horton had the authority to order Defendant O'Brien not to seize and detain Mr. Solon and failed to do so.

193. Every objectively reasonable law enforcement supervisor would have known that Defendant Holton had a duty to intervene and prevent Defendant O'Brien's unlawful seizure and detention of Mr. Solon.

194. Under the facts and circumstances alleged herein, pre-existing law gave Defendant Horton had fair warning that he had a duty to intervene to prevent Mr. Solon's seizure and detention was unreasonable in scope, intrusiveness and duration. *See Keating v. City of Miami*, 598 F.3d 753 (11th Cir. 2010)(supervisor may be held liable for failing to intervene when supervisor has ability to prevent a known constitutional violation by exercising his authority over the subordinate and subsequently fails to do so), *United States v. Gil*, 204 F.3d 1347, 1351 (11th Cir. 2000) (investigatory detention that was not reasonably related in scope to the circumstances which justified the interference in the first place violates the Fourth Amendment); *Thompson v. Hall*, 479 Fed. Appx 243 (11th Cir. 2012) (finding handcuffing and investigatory detention of plaintiff was unreasonable).

195. As a direct and proximate result of Defendants' actions, Mr. Solon was seized and detained in violation of his Fourth Amendment rights, entitling him to actual, compensatory and punitive damages.

## COUNT V

**FIRST AMENDMENT**
*Retaliatory Detention*
(Defendants Michael O'Brien & Horton)

196.  Defendant O'Brien violated Mr. Solon's First Amendment rights by seizing and detaining him at the scene without arguable reasonable suspicion in retaliation for Mr. Solon's legitimate, peaceable criticism of law enforcement.

197.  Defendant Horton, a supervisory official on the scene, personally participated in Defendant O'Brien's unlawful seizure and detention of Mr. Solon in retaliation for his legitimate, peaceable criticism of law enforcement

198.  Under the facts and circumstances alleged herein, every objectively reasonable law enforcement officer in the Defendants' position would have known that seizing and detaining Mr. Solon in retaliation for his legitimate, peaceable criticism of law enforcement violated the First Amendment.

199.  Under the facts and circumstances alleged herein, pre-existing law gave Defendants fair warning that seizing and detaining Mr. Solon in retaliation for his legitimate, peaceable criticism of law enforcement violated the First Amendment. *See Houston v. Hill*, 482 U.S. 451, 461-63 (1987)(the First Amendment "protects a significant amount of verbal criticism and challenge directed at police officers . . . The freedom of individuals verbally to oppose

or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."); *see also Skop v. City of Atlanta*, 485 F.3d 1130, 1139 (11th Cir. 2007) (finding that the idea that a driver's brief inquiry to an officer as to why she should not be allowed to pull into her driveway constituted obstruction "collides head-on with the First Amendment."), *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994)(supervisor liable if he personally participated in the alleged constitutional violation.)

200. As a direct and proximate result of Defendants' actions, Mr. Solon was seized and detained in an unreasonable manner in violation of his First Amendment rights, entitling him to actual, compensatory and punitive damages as set forth in paragraphs 188-190 of this Complaint.

## COUNT VI

### FOURTH AMENDMENT
### *Failure to Intervene - Retaliatory Detention*
(Defendant Michael Horton)

201.   Defendant Holton, a sergeant and supervisor on the scene, violated Mr. Solon's Fourth Amendment rights by failing to intervene to stop Defendant O'Brien's unlawful seizure and detention of Mr. Solon without arguable reasonable suspicion in retaliation for Mr. Solon's legitimate, peaceable criticism of law enforcement.

202.   Defendant Holton knew that Defendant O'Brien had seized and detained Mr. Solon in retaliation for Mr. Solon's legitimate, peaceable criticism of law enforcement.

203.   Defendant Horton had the authority to order Defendant O'Brien not to seize and detain Mr. Solon for an illegitimate purpose and failed to do so.

204.   Every objectively reasonable law enforcement supervisor would have known that Defendant Holton had a duty to intervene and prevent Defendant O'Brien's unlawful seizure and detention of Mr. Solon.

205.   Under the facts and circumstances alleged herein, pre-existing law gave Defendant Horton had fair warning that he had a duty to intervene to prevent Mr. Solon's seizure and detention was unreasonable in scope, intrusiveness

and duration. *See Keating v. City of Miami*, 598 F.3d 753 (11th Cir. 2010)(supervisor may be held liable for failing to intervene when supervisor has ability to prevent a known constitutional violation by exercising his authority over the subordinate and subsequently fails to do so), *United States v. Gil*, 204 F.3d 1347, 1351 (11th Cir. 2000) (investigatory detention that was not reasonably related in scope to the circumstances which justified the interference in the first place violates the Fourth Amendment); *Thompson v. Hall*, 479 Fed. Appx 243 (11th Cir. 2012) (finding handcuffing and investigatory detention of plaintiff was unreasonable).

206.  As a direct and proximate result of Defendants' actions, Mr. Solon was seized and detained in violation of his Fourth Amendment rights, entitling him to actual, compensatory and punitive damages.

## COUNT VII

**FOURTH AMENDMENT**
*Malicious Prosecution*
(All Defendants)

207.   Defendants instituted Mr. Solon's prosecution via warrants.

208.   The warrants were obtained because of Defendants' inclusion of knowingly and recklessly false statements and the knowing and reckless exclusion of exculpatory evidence.

209.   Defendants did not know any information that could support a reasonable belief that probable cause existed to arrest Mr. Solon.

210.   Defendants acted in the complete absence of probable cause and with malice.

211.    The dismissal of Mr. Solon's prosecution constitutes a favorable termination on the merits.

212.   As direct and proximate result of Defendants' actions, Mr. Solon was subjected to arrest and prosecution without probable cause in violation of his Fourth Amendment rights, entitling him to actual, compensatory and punitive damages.

## COUNT VIII

### FOURTEENTH AMENDMENT
### *Fabrication of Evidence*

213. Defendants fabricated evidence against Mr. Solon which was used to initiate and continue a criminal proceeding against him.

214. Mr. Solon suffered a loss of liberty because of Defendants' fabrication of evidence.

215. Defendants' actions deprived Mr. Solon of the Due Process of law.

216. Although probable cause did not exist, probable cause is not a defense to a fabrication of evidence claim.

217. At the time that Defendants fabricated evidence against Mr. Solon, it was clearly established that the fabrication of evidence by law enforcement violates clearly established law. *See Riley v. City of Montgomery*, 104 F.3d 1247, 1253 (11th Cir. 1997) ("It was well established in 1989 that fabricating incriminating evidence violated constitutional rights.").

218. As direct and proximate result of Defendants' actions, Mr. Solon was subjected to prosecution without probable cause in violation of his Fourth Amendment rights, entitling him to actual, compensatory and punitive damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court for the following relief:

      a.  Hold a trial by jury on all issues so triable;

      b.  Award economic, compensatory, and punitive damages;

      c.  Award Plaintiff attorneys' fees under 42 U.S.C. § 1988;

      d.  Tax all costs of this action against Defendants; and

      e.  Award any additional relief that is just and appropriate.

This 30th day of May, 2019.

Respectfully Submitted,

/s/ William J. Atkins
William J. Atkins
Georgia Bar No. 027060

**EDMOND, LINDSAY & HOFFLER, LLP**
344 Woodward Avenue, SE
Atlanta, Georgia 30312
(404) 525-1090
batkins@edmondfirm.com

/s/ Zack Greenamyre
Zack Greenamyre
Georgia Bar No. 293002

**MITCHELL & SHAPIRO LLP**
3490 Piedmont Road, Suite 650
Atlanta, Georgia 30305
404-812-4747
zack@mitchellshapiro.com